IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

        Plaintiff/Respondent,

v.                                                            CIV 07-193 WJ/CEG
                                                            CR 02-375 WJ

JUAN CARLOS HERRERA,

        Defendant/Movant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Juan Carlos Herrera's ("Herrera") pro se § 2255 motion, which alleges that he received ineffective assistance of counsel before the district court and on appeal. *See Doc. 137*.[1] Herrera, without a plea agreement, pled guilty to an indictment charging him with conspiracy to distribute 50 grams and more of cocaine. He was sentenced to 135 months imprisonment. All of the issues can be resolved on the record, and therefore, an evidentiary hearing is unnecessary. *See, e.g.*, *United States v. Lopez*, 100 F.3d 113, 119 (10th Cir. 1996); *Rule 8(a), Rules Governing Section 2255 Cases In The United States District Courts*. For the reasons below, I recommend that Herrera's motion be denied.

### I.  Factual and Procedural Background

On December 13, 2001, an undercover agent met with Herrera and a co-defendant, Fidel

---

[1] All document references are to the underlying criminal case, CR 02-375 WJ, unless otherwise noted.

Laroza ("Laroza"), at an Albuquerque apartment.[2]  The undercover agent told Herrera that he wanted two ounces of crack cocaine.  Herrera told Laroza to get the crack cocaine and Laroza retrieved it from the front porch of the apartment.  Herrera took the crack cocaine and gave it to the undercover agent who in turn gave Herrera $1,200.

     A second sale took place on January 15, 2002, when a confidential informant contacted Herrera's brother, Julian, to purchase another $1,200 worth of crack cocaine.  Later that day, an undercover agent met with Herrera, Laroza, and another co-defendant, Magnolio Coll ("Coll"), at the same Albuquerque apartment.   The undercover agent told Herrera that he wanted to buy two ounces of crack cocaine.  Herrera stated that he did not have that much crack cocaine, but could get some from another location.  Herrera and Coll went to retrieve the crack cocaine and the undercover agent waited at the apartment with Laroza.  When Herrera and Coll returned, Herrera gave the undercover agents a package of crack cocaine.  In return, Herrera again received $1,200.

     On February 12, 2002, agents executed a search warrant at the Albuquerque apartment that served as the site for the previous drug transactions.  A loaded firearm was discovered behind two mattresses in one of the bedrooms.  Herrera, Laroza, Coll, and Julian Herrera were arrested.  All were subsequently charged in federal court.

     Joe Romero ("Mr. Romero") was appointed to represent Herrera.  *See Doc. 7*.  On March 13, 2002, the grand jury indicted Herrera, Laroza, and Coll on one count of conspiracy to distribute 50 grams and more of cocaine base, in violation of 21 U.S.C. § 846, and two counts of distribution of 50 grams and more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and

---

[2] The factual background has been adopted from the appeal in the underlying criminal case.  *See United States v. Herrera*, 118 Fed.Appx. 448, 449-50 (10th Cir. 2004) (unpublished) ("*Herrera I*").

(b)(1)(A).³  *See Doc. 17*.  Trial was set for July 8, 2007.  *See Doc. 50*.  On July 8, 2007, however, Herrera entered a guilty plea as to the charges in the indictment without a plea agreement.  *See Doc. 78*.

At the July 8, 2007 change of plea hearing in front of United States District Judge William P. Johnson, the following exchange occurred:

> THE COURT:  Has anyone made any promise or assurance to you of any kind in an effort to induce you to plead guilty in this case?
> MR. ROMERO:  Your Honor, he wants to explain what we discussed in terms of these – of the representations that I have made.  I have informed Mr. Juan Carlos Herrera that, as a result of his plea to these charges, he is facing a mandatory minimum 10-year sentence.  I have informed him that he may qualify for the safety-valve adjustment to the 10-year mandatory minimum sentence.  It is his desire to enter into this plea with the hope and the possibility that he may qualify for the safety valve, and based on that understanding, not a guarantee, but an opportunity to apply and qualify for the safety valve, that he is going forward today.  He's also indicated to me, as he has from day one when I first met him, that the two codefendants had nothing to do with the transactions charged in the indictment, and he is going to testify on their behalf and he has every intention to do that today.
> Is that – is that a summary, a correct summary, Mr. Herrera, of --
> THE DEFENDANT:  Yes.
> THE COURT:  Okay.  Mr. Herrera, do you understand that, in all likelihood, the government will oppose your qualifying for the safety valve?
> THE DEFENDANT:  Yes.
> THE COURT:  And that whether or not you qualify would be up to me at sentencing?
> THE DEFENDANT:  Yes. . . .
> THE COURT:  Would you tell me in your own words why you're pleading guilty?
> THE DEFENDANT:  I am pleading guilty because I made

---

³ The criminal complaint against Julian Herrera was dismissed without prejudice because he was killed in March of 2002.  *See Doc. 19* of MJ 02-100 DJS; *see also Doc.* 68 at 1.

    the two sales.

*Plea Hearing Transcript* at 4-6.

  Following Herrera's plea, a presentence investigation report ("PSR") was prepared.  The PSR recommended that Herrera receive: (1) a two-level increase pursuant to U.S.S.G. § 2D1.1(b)(1) for possession of a firearm, and (2) an additional two-level increase pursuant to U.S.S.G. § 3B1.1(c) for his role as a leader in the criminal activity.  *See Sentencing Transcript* at 9-11.  Because of the recommended upward adjustments, Herrera was not eligible for safety valve relief.  *Id.* at 11.  The PSR also recommended that Herrera receive a full three-level reduction for acceptance of responsibility, despite his untimely guilty plea.  *Id*. at 12.  With a Criminal History Category of I, Herrera's resulting guideline imprisonment range was 135-168 months.  *Id*. at 11-12.

  On December 26, 2002, Edward Bustamente ("Mr. Bustamente") filed a substitution of counsel for Herrera, replacing Mr. Romero.  *See Doc. 96*.  On April 7, 2003, Herrera filed objections to the upward adjustments contained in the PSR.  *See Doc. 116*.  He argued that the firearm was not found until one month after the final drug transaction and that there was no evidence of his involvement in drug transactions after January 15, 2002.  *Id.* at 1-6.  Herrera also argued that there was no evidence that he was a leader or organizer of the criminal activity.  *Id*. at 6-10.  Therefore, he argued that he qualified for safety valve relief pursuant to U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f).  *Id*. at 11.  At sentencing, the Court overruled Herrera's objections to the PSR and sentenced him to 135 months, the low end of the guideline range.  *See Doc. 124*.

  Herrera appealed his conviction and sentence, with Mr. Bustamente as his appellate counsel.  *See Herrera I*, 118 Fed.Appx. at 448.  Herrera argued that the district court erred in

accepting his guilty plea and sought to have the plea withdrawn or amended. *Id*. at 450-51. In the alternative, he challenged the district court's upward adjustments of his sentence for possession of a firearm and being a leader of criminal activity. *Id*. at 452-53. In addition, in light of *Blakely v. Washington*, 542 U.S. 296 (2004), Herrera also argued that the district court committed plain error when it applied the same upward adjustments to his sentence. *Id*. at 453-54.

In *Herrera I*, the Tenth Circuit affirmed his conviction and sentence in all respects. *See Herrera I*, 118 Fed.Appx. at 454. Herrera then filed a petition for writ of certiorari with the Supreme Court, arguing that his sentence was erroneous pursuant to *Blakely*. *See Herrera v. United States*, ---U.S.---, 126 S.Ct. 103 (2005) ("*Herrera II*"). While the writ of certiorari was pending, the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005). In light of *Booker*, the Court vacated judgment and remanded the case for further consideration. *See Herrera II*, 125 S.Ct. at 103.

On remand, Herrera contended that the district court erred when it found facts that increased his sentence for the presence of a firearm and being a leader or organizer. *See Herrera v. United States*, 166 Fed.Appx. 309, 310 (10th Cir. 2006) (unpublished) ("*Herrera III*"). Without the upward adjustments, Herrera argued that he would have qualified for safety valve relief, which might have reduced his sentence below 120 months, the mandatory minimum. *Id*. at 312. The Court reviewed Herrera's constitutional *Booker* claim for plain error. *Id*. In doing so, it held:

> Mr. Herrera is unable to satisfy [the] burden [of the fourth prong].
> His briefing on this issue consists of two short paragraphs that do
> no more than allege the error without setting forth any facts or

5

>	supporting argument. He does not point to anything in the record that suggests the district court would impose a lower sentence on remand, and nothing in the record indicates that this might be the case.

*Id.* at 313. The Court reinstated its prior order and affirmed Herrera's sentence. *Id.*

## II.  Ineffective Assistance of Counsel Claims

To establish ineffective assistance of counsel, Herrera must satisfy a two-part test. First, he must show that counsel's performance fell below an objective standard of reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Judicial scrutiny of counsel's performance is highly deferential; thus, Herrera must overcome the presumption that the challenged action might be considered sound trial strategy. *Id.* at 689. To be constitutionally ineffective, counsel's conduct "must have been completely unreasonable, not merely wrong." *Moore v. Gibson*, 195 F.3d 1152, 1178 (10th Cir. 1999); *see also Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999). Second, Herrera must show he has been prejudiced; that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. "In the guilty plea context, to establish a claim for ineffective assistance of counsel, a defendant must show . . . that, but for counsel's error, the defendant would have insisted upon going to trial." *United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005). Conclusory assertions are insufficient to establish ineffective assistance. *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994). Because this test is two pronged, if either prong is not met, it is unnecessary to discuss the other. *See, e.g., Hill*, 474 U.S. at 60. The test set forth in *Strickland* also applies to claims of ineffective assistance of appellate counsel. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000).

*A. Ineffective Assistance of Counsel before the District Court*

Herrera claims that his counsel was ineffective for leading "him to believe that the so-called 'safety valve' provision of 18 USC §3553(f)(1)-(5) and USSG §5C1.2 would be applicable if, but <u>only</u> if, he pleaded guilty rather than going to trial." *Doc. 137* at 4.  As factual support for this claim, he cites the plea colloquy quoted above, in which Mr. Romero states: "It is [Herrera's] desire to enter into this plea with the hope and the possibility that he may qualify for the safety valve, and based on that understanding, not a guarantee, but an opportunity to apply and qualify for the safety valve, that he is going forward today." *Plea Transcript* at 4.

While the record does show that Herrera's attorney informed him that there was a possibility of qualifying for safety valve relief, it does not support Herrera's allegation that his counsel advised him that he would only qualify for safety valve relief if he pled guilty.  Herrera's counsel was simply informing the Court of his client's hope and desire to qualify for safety valve relief.  The record clearly indicates that Herrera's "primary purposes" for pleading were to "accept responsibility for the two specific transactions" that were alleged against him and "to testify on behalf of the other two codefendants." *Plea Transcript* at 11.  Herrera's allegation, then, is contradicted by the contents of the record.

Even if, however, Herrera's attorney did inform him that he would only qualify for safety valve relief by pleading guilty, such advice does not fall below an objective standard of reasonableness. *See United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993) ("A miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel."); *Silva*, 430 F.3d at 1099 (an attorney's erroneous sentence estimate does not render a plea involuntary); *United*

7

*States v. Landsaw*, 206 Fed.Appx. 773 (10th Cir. 2006) (unpublished) (holding that incorrect advice regarding safety valve relief does not render counsel's performance constitutionally deficient).

In addition, Herrera cannot show he was prejudiced by his attorney's alleged advice. In his § 2255 motion, Herrera does not even insist that but for his counsel's alleged advice, he would have gone to trial. The record reveals that by pleading guilty, Herrera received a substantial benefit: his sentence was reduced by at least 53 months.[4] Considering this benefit, the Court concludes that despite his attorney's alleged incorrect advice, Herrera would have still elected to plead guilty. *See Miller v. Champion*, 262 F.3d 1066, 1075 (10th Cir. 2001).

Herrera also alleges that "it would [have been] impossible for [him] to meet the safety valve criteria once he had pleaded guilty" and that "any competent criminal defense attorney would have known that the facts of this case were inconsistent with Mr. Herrera's ability to qualify for a safety valve." *Doc. 137* at 4-5. At the time that Herrera entered his plea, however, the facts that resulted in his upward adjustments were contested. Herrera's counsel filed an objection to those upward adjustments, arguing that Herrera was eligible for safety valve relief.[5] If the Court had ruled in Herrera's favor on these factual determinations, he would have qualified for safety valve relief.[6] Notwithstanding this, the alleged advice was not objectively unreasonable

---

[4] Had Herrera elected to go to trial, he would not have received a three-level reduction for acceptance of responsibility. Therefore, based on a total offense level of 36, his guideline imprisonment range would have been 188-235 months.

[5] On appeal, Herrera's counsel also contested the upward adjustments and argued that Herrera was eligible for safety valve relief. *See, e.g., Herrera I,* 118 Fed.Appx. at 452-53; *Herrera III*, 166 Fed.Appx. at 310.

[6] Assuming that Herrera truthfully provided the government with all information and evidence he had concerning the charged offenses pursuant to U.S.S.G. §5C1.2(a)(5).

under the first prong of *Strickland*. *See Landsaw*, 206 Fed.Appx. at 773. In addition, Herrera simply cannot show that he has been prejudiced. But for his attorney's advice, he has not shown how his sentence would have been any different than the one received, or, as discussed above, that he would have elected to go to trial. Accordingly, Herrera's claim should be dismissed.

### B.  Ineffective Assistance of Counsel on Appeal

Herrera claims that Mr. Bustamente was ineffective because he failed to properly brief his constitutional *Booker* error on remand. *See Doc. 137* at 6. To support this claim, Herrera cites from the language contained in *Herrera III*[7] and argues that his attorney's performance could "hardly be described as effective assistance of counsel." *Id*.

Herrera does not provide any reason why the district should not have adjusted his sentence upwards for the presence of a firearm and being a leader or organizer. For this reason his allegation is conclusory. The Court has no basis on which to conclude that counsel's alleged failure to properly brief his constitutional *Booker* error claim was objectively unreasonable. In addition, because Herrera utterly fails to suggest how, but for counsel's alleged error, the outcome would have been different, he cannot show that he has been prejudiced. In so finding, the Court notes that it agrees with the Tenth Circuit's conclusion that "nothing in the record indicates that . . . the district court would impose a lower sentence on remand." *Herrera III*, 166 Fed.Appx. at 313. Accordingly, this claim should be dismissed.

---

[7]
> Mr. Herrera is unable to satisfy this burden. His briefing on this issue consists of two short paragraphs that do no more than allege the error without setting forth any facts or supporting argument. He does not point to anything in the record that suggests the district court would impose a lower sentence on remand, and nothing in the record indicates that this might be the case.

*Herrera III*, 166 Fed.Appx. at 313.

However, construing Herrera's pro se pleading liberally, he also argues that his appellate counsel was ineffective for failing to argue non-constitutional *Booker* error on remand. *See Doc. 137* at 6-7. As factual support for this claim, Herrera argues that "[i]f the district court had known that the guidelines were not mandatory, it is entirely possible that the district court would have believed that a sentence of 120 months (the mandatory minimum) would have been sufficient punishment for this first-time offender." *Id*.

If the Tenth Circuit had addressed non-constitutional *Booker* error on remand, the standard of review would be plain error. *See United States v. Gonzalez-Huerta,* 403 F.3d 727, 732 (10th Cir. 2005); *see also Herrera III*, 66 Fed.Appx. at 312. For collateral review purposes, the Court will also apply the plain error standard of review.[8] "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. Because the fourth prong imposes such a high burden, cases are often resolved on the fourth prong rather than on the third. *Id*. at 736. As such, the Court will proceed to the fourth prong.

Under the fourth prong, the Tenth Circuit "will not notice a non-constitutional error . . . unless it is both particularly egregious and our failure to notice the error would result in a miscarriage of justice." *Id*. Simply applying the Guidelines mandatorily is not enough. *See United States v. Yazzie*, 407 F.3d 1139, 1146-47 (10th Cir. 2005). Courts have generally held that the fourth prong is met when "the sentence exceeds the statutory maximum, *United States v. Maxwell*, 285 F.3d 336, 342 (4th Cir. 2002), when the sentencing court employs an improper

---

[8] The District of New Mexico adopted this position in two other § 2255 cases that arose in the same posture. *See Lindsey v. United States,* CV 05-193 MCA/WDS at Docs. 12, 20; *United States v. Duran-Salazar*, CV 06-940 BB/KBM at Docs. 11, 13.

10

burden of proof, *United States v. Jordan*, 256 F.3d 922, 933 (9th Cir. 2001), and when the sentencing court denies the defendant his right to allocution, *United States v. Adams*, 252 F.3d 276, 288-89 (3rd Cir. 2001)." *Gonzalez-Huerta*, 403 F.3d at 739.

Upon a complete review of the record, the Court concludes that Herrera cannot satisfy the fourth prong. The record is devoid of any mitigating evidence that would remotely suggest that Herrera can meet this burden. As such, Herrera cannot satisfy the prejudice prong under *Strickland* because if his counsel had argued non-constitutional *Booker* error on remand, Herrera's sentence would not have changed. If Judge Johnson disagrees, he can address the non-constitutional *Booker* error on review of these proposed findings and resentence accordingly. Wherefore,

   IT IS HEREBY RECOMMENDED THAT:

   1) Herrera's § 2255 motion be denied; and

   2) that CV 07-193 WJ/CEG be dismissed with prejudice.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE